# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Petitioner**

**v.)  No. 25-ICA-78**          (JCN: 2019025668)

**JOSEPH M. GASVODA,**
**Claimant Below, Respondent**

**FILED**
**October 24, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Murray American Energy, Inc. ("Murray") appeals the January 29, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Joseph M. Gasvoda timely filed a response.[1] Murray did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted no additional permanent partial disability ("PPD") award, and instead granting an additional 4% PPD award for a total PPD award of 13%.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Gasvoda injured his right wrist while at work on June 3, 2019, when the drill he was operating became stuck and twisted his wrist. Mr. Gasvoda completed an Employees' and Physicians' Report of Occupational Injury form dated June 3, 2019. The physicians' portion of the form was completed by medical personnel at Wheeling Hospital Emergency Department. The injured body part was listed as the right wrist, and it was noted that Mr. Gasvoda's condition was a direct result of an occupational injury.

On June 6, 2019, Mr. Gasvoda was seen by Ross Tennant, FNP, at Wheeling Hospital. Mr. Gasvoda reported that he was holding a brush drill at work when it suddenly got caught, forcibly twisting his right wrist. The impression was an acute right wrist sprain. On June 13, 2019, the claim administrator issued an order holding the claim compensable for unspecified sprain of the right wrist.

---

[1] Murray is represented by Aimee M. Stern, Esq. Mr. Gasvoda is represented by M. Jane Glauser, Esq.

1

Mr. Gasvoda underwent an MRI of his right wrist on June 28, 2019, which revealed post-operative changes of carpal fusion with significant hardware artifact; surrounding primary and secondary changes of osteoarthritis at the margins of the fusion with suspected radial-sided scarring and synovitis; and numerous small radial-sided articular joint bodies.

Mr. Gasvoda was seen by Charles Tracy, M.D., on July 17, 2019. Dr. Tracy noted that Mr. Gasvoda was a former patient who had a scapholunate ligament injury and scaphoid fracture nonunion when he was younger, which resulted in a salvage operation, specifically four-corner arthrodesis. Mr. Gasvoda reported that he had recently injured his wrist while working for Murray. Dr. Tracy opined that because of the location of Mr. Gasvoda's symptoms and their persistence, a wrist arthroscopy would be helpful to evaluate for a TFCC complex and the ulnar triquetral ligament tear on the volar ulnar aspect of the right wrist. Dr. Tracy indicated that if an ulnar triquetral ligament tear was identified, then an arthroscopic repair would be recommended.

On September 3, 2019, Mr. Gasvoda underwent a right wrist arthroscopy performed by Dr. Tracy. The preoperative diagnosis was right wrist pain, and the postoperative diagnoses were right wrist pain and tear of the volar radial carpal ligament. On October 22, 2019, Mr. Gasvoda underwent a repair of the radiolunate ligament of the right wrist, also performed by Dr. Tracy. The preoperative and postoperative diagnoses were radio lunate ligament tear of the right wrist.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation ("IME") of Mr. Gasvoda at the request of the claim administrator, and issued a report dated February 5, 2020. Mr. Gasvoda reported that he did not have his usual strength in his right hand. Further, he complained of tingling and numbness in the tips of the fingers in his right hand. Dr. Mukkamala noted that Mr. Gasvoda previously injured his right wrist in 2006 when he was in high school.[2] Dr. Mukkamala assessed a sprain of the right wrist, status post repair of the radio lunate ligament. Dr. Mukkamala opined that he would tentatively place Mr. Gasvoda at maximum medical improvement ("MMI") two weeks after his evaluation and stated that Mr. Gasvoda would benefit from three additional weeks of physical therapy. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), Dr. Mukkamala assessed 5% whole person impairment, all of which he apportioned to the prior noncompensable wrist injury. Thus, Dr. Mukkamala concluded Mr. Gasvoda did not have any permanent impairment from the compensable injury.

---

[2] Dr. Mukkamala indicated in his report that although Mr. Gasvoda stated that the previous football injury occurred in 2006, the medical records establish that this injury actually occurred in 2005.

Mr. Gasvoda followed up with Dr. Tracy on March 9, 2020, and reported pain at the radial carpal joint and recurrent paresthesia in the median nerve distribution. Dr. Tracy indicated that Mr. Gasvoda should remain off work for two weeks.

Dr. Mukkamala performed a second IME of Mr. Gasvoda on June 10, 2020, and issued a report dated June 11, 2020. Mr. Gasvoda reported pain in his right wrist, particularly with activity, and stated that he lost grip strength in his right hand and sometimes drops objects. Dr. Mukkamala opined that Mr. Gasvoda had not reached MMI for the compensable injury and agreed with Dr. Tracy's recommendation for a right wrist fusion. Dr. Mukkamala indicated that because Mr. Gasvoda had not reached MMI, rating of permanent impairment should be deferred by about six months.

On July 14, 2020, Mr. Gasvoda underwent a conversion to total wrist arthrodesis, performed by Dr. Tracy. The postoperative diagnosis was right wrist strain status post four-corner arthrodesis surgery of the right wrist.

Dr. Mukkamala performed a third evaluation of Mr. Gasvoda on January 7, 2021. Mr. Gasvoda reported loss of strength in the right hand and wrist. Dr. Mukkamala diagnosed sprain of the right wrist, status post wrist fusion. Dr. Mukkamala opined that Mr. Gasvoda had reached MMI for the compensable injury, and that he did not require any additional diagnostic studies or treatment. Using the *Guides*, Dr. Mukkamala assessed 21% upper extremity impairment using Figure 26 on page 36. For the ankylosis in the radial and ulnar deviation direction, Dr. Mukkamala assessed 9% upper extremity impairment using Figure 29 on page 38 of the *Guides*. Dr. Mukkamala converted the 28% upper extremity impairment to 17% whole person impairment. Dr. Mukkamala opined that Mr. Gasvoda's previous football injury in 2005 was the more substantial injury. Dr. Mukkamala apportioned 9% WPI to the compensable injury and 8% WPI to the prior noncompensable injury. Thus, Dr. Mukkamala recommended 9% WPI for the compensable injury.

On January 13, 2021, the claim administrator granted Mr. Gasvoda a 9% PPD award based on Dr. Mukkamala's report. Mr. Gasvoda protested this order. On April 9, 2021, the claim administrator held the claim compensable for traumatic rupture of other ligament of the right wrist, based on Dr. Tracy's operative reports.

On October 25, 2021, Dr. Tracy released Mr. Gasvoda to full duty work with no restrictions. On October 28, 2021, Mr. Gasvoda followed up with NP Tennant and reported minimal discomfort in the right wrist. The impression was right wrist sprain, tear of the volar radiocarpal ligament, status post open volar anatomy of the volar radiocarpal ligaments, and status post right wrist arthrodesis.

On February 2, 2023, this Court issued a memorandum decision remanding the claim for a new IME. *See Gasvoda v. Murray Am. Energy, Inc.,* No. 22-ICA-108, 2023 WL 1463708 (W. Va. Ct. App. Feb. 2, 2023) (memorandum decision). This Court

concluded that until Mr. Gasvoda was found to be at MMI for all of the compensable conditions, his claim was not appropriate for a PPD rating.

Dr. Mukkamala performed an additional evaluation of Mr. Gasvoda on May 2, 2023. Mr. Gasvoda reported that he was doing well and had not received any treatment for his wrist in two years. Dr. Mukkamala placed Mr. Gasvoda at MMI for the compensable injury. Using the *Guides*, Dr. Mukkamala assessed 18% WPI for the right wrist. Dr. Mukkamala noted that the previous football injury that occurred in 2005 was a substantial injury. Dr. Mukkamala apportioned 9% WPI to the compensable injury and 9% WPI to the non-compensable football injury. Ultimately, Dr. Mukkamala concluded that Mr. Gasvoda had been fully compensated and had no additional impairment. On May 11, 2023, the claim administrator issued an order closing the claim for PPD benefits, on the basis that Mr. Gasvoda had been fully compensated by his prior award. Mr. Gasvoda protested this order to the Board.

On August 6, 2024, Bruce Guberman, M.D., reviewed Mr. Gasvoda's medical records. Dr. Guberman agreed with Dr. Mukkamala's recommendation of 18% WPI for the right wrist. Dr. Guberman noted that the most impairment that could be attributed to the preexisting right wrist conditions would be 5% based on Dr. Mukkamala's report dated February 5, 2020. Dr. Guberman apportioned 5% to the preexisting right wrist condition, and 13% impairment to the compensable injury. Dr. Guberman indicated that the fusion performed on July 14, 2020, would not have been necessary if not for the compensable injury.

On January 29, 2025, the Board reversed the claim administrator's order, which granted no additional PPD award, and instead granted an additional 4% PPD award for a total award of 13% PPD. The Board found that the reports of Drs. Mukkamala and Guberman were of equal evidentiary weight, and adopted Dr. Guberman's report pursuant to West Virginia Code § 23-4-1g (2003), as it was most consistent with Mr. Gasvoda's position. It is from this order that Murray now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;

4

(3) Made upon unlawful procedures;

(4) Affected by other error of law;

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Murray argues that the Board incorrectly applied West Virginia Code § 23-4-1g in finding that the resolution most consistent with Mr. Gasvoda's position should be adopted. Further, Murray asserts that the Board erred in concluding that the evaluations of Dr. Mukkamala and Dr. Guberman are of equal evidentiary value. Finally, Murray avers that Dr. Mukkamala's apportionment of 9% to Mr. Gasvoda's preexisting wrist injury is supported by the medical evidence of record, and that Mr. Gasvoda's records indicate that he suffered from a preexisting right wrist condition in the form of significantly decreased right wrist range of motion.

In Syllabus Point 6 of *Duff v. Kanawha County Commission*, 250 W. Va. 510, 905 S.E.2d 528 (2024), the Supreme Court of Appeals of West Virginia held that:

Under West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This requires the employer to prove that the claimant "has a definitely ascertainable impairment resulting from" a preexisting condition(s). This requires that employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting conditions.

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Gasvoda established that he is entitled to a 13% PPD award. Here, the Board weighed the evidence and concluded that the reports of Drs. Guberman and Mukkamala are of equal evidentiary weight. Pursuant to West Virginia Code § 23-4-1g, "[i]f, after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted." Further, both Dr. Guberman and Dr. Mukkamala apportioned for the preexisting right wrist football injury in their respective reports. The Board was not clearly wrong in finding that Drs. Guberman and Mukkamala were equally persuasive, and thus, adopting Dr. Guberman's findings as required by West Virginia Code § 23-4-1g.

As set forth by the Supreme Court of Appeals of West Virginia, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which

5

presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order, which granted no additional PPD award, and instead granted an additional 4% PPD award, for a total PPD award of 13%.

Accordingly, we affirm the Board's January 29, 2025, order.

Affirmed.

**ISSUED:** October 24, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White